UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | <u>DECISION & ORDER</u> and <u>REPORT & RECOMMENDATION</u> |
| Plaintiff, | |
| v. | 10-CR-6211L |
| MARTIN YOUNG, | |
| Defendant. | |

---

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated December 14, 2010, all pretrial matters in the above-captioned case were referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 67). Defendant Martin Young ("Young") has been charged with conspiracy to possess with intent to distribute and to distribute one hundred or more kilograms of marijuana, in violation of 21 U.S.C. § 846. (Docket # 1).

Currently pending before the Court are Young's motions to dismiss the indictment for insufficiency of the evidence and to suppress physical evidence, statements and evidence of a photographic identification. (Docket # 72). On July 6, 2011, this Court conducted an evidentiary hearing on the suppression motions. (Docket ## 93, 94). For the reasons discussed below, I recommend that the district court deny Young's motions to dismiss the indictment and to suppress tangible evidence and statements. As to the photographic identification, this Court shall continue the *Wade* hearing before making a recommendation on that motion.

## FACTUAL BACKGROUND

### I. September 15, 2009 Identification Procedure

Andrew Woeppel ("Woeppel") testified that he has been employed as an agent with the Drug Enforcement Administration ("DEA") for over six years. (Tr. 8).[1] On September 15, 2009, he and another DEA agent, Brian Hanley ("Hanley"), conducted a photographic identification procedure as part of a marijuana trafficking investigation in which they were involved. (Tr. 49-50, 80). According to Woeppel, on that day he met with a confidential informant who had previously provided information about Young. (Tr. 81). Woeppel testified that he asked the informant to review a photographic array and to indicate whether he or she recognized any of the individuals depicted in the eight photographs. (Tr. 51, 54). Woeppel further testified that he asked the informant to initial and date the photograph of any individual whom the informant recognized and to write the name of the individual. (Tr. 51). After considering the array for about ten seconds, the informant identified Young in photograph six. (Tr. 52, 55-56, 80). The informant wrote the name "Martin Young," along with the informant's initials and the date, below the picture. (Tr. 55-56). Both agents signed the photo array. (Tr. 53).

The array contains eight photographs of different African-American men. (G. Ex. 3). Photograph six depicts Young. (Tr. 83; G. Ex. 3). Young's complexion is significantly darker than the other seven individuals. (G. Ex. 3). In addition, the background hue in his photograph is blue, while the backgrounds of the other photographs are more muted, ranging in

---

[1] The transcript of the July 6, 2011 hearing shall be referred to as "Tr. __." (Docket # 94).

hues from grays to greens.² (*Id*.). All men depicted have short hair and mustaches, and some have slight beards. (*Id*.).

## II. November 12, 2010 Arrest and Search

Woeppel testified that on November 12, 2010, at approximately 5:30 a.m., he and an arrest team of six agents arrived at Young's home at 203 Hillcrest Street in Rochester, New York to execute a warrant for Young's arrest. (Tr. 9, 62). At approximately 5:45 a.m., he saw Young leave his house and get into a Ford pickup truck that was parked in the driveway. (Tr. 9, 10, 12). At that point, Woeppel and the other agents approached the truck with their weapons drawn, identified themselves as law enforcement officers and arrested Young. (Tr. 10, 12-14, 64). After Young was handcuffed, the agents holstered their weapons. (Tr. 15, 64). Agents seized a cell phone and wallet from Young, but later returned the wallet. (Tr. 18-19, 65).

Woeppel testified that while they were in the driveway, he and Hanley explained to Young that they were DEA agents and had a warrant for his arrest. (Tr. 15). They asked Young if he would consent to a search of his residence, and Young assented. (Tr. 15, 17, 22, 67). Young identified for the agents the key to his front door, which the agents used to enter the residence. (Tr. 18, 67).

After entering the home, agents placed Young, handcuffed, on a couch in the living room. Woeppel and Hanley remained with Young while other agents conducted a security sweep of the house. (Tr. 20, 32, 66). No evidence was seized during the sweep. (Tr. 20).

---

² In seemingly contradictory testimony, Woeppel testified that Young's photograph was "by far the darkest photograph in the array" and that it was not "far darker than any of the other photographs." (Tr. 83).

3

According to Woeppel, he and Hanley again explained that they were DEA agents and were present to execute a warrant for Young's arrest. (Tr. 20-21). Woeppel testified that Hanley read Young his *Miranda* warnings from DEA Form 13. (Tr. 37-40, 42; G. Ex. 2). According to Woeppel, Young stated that he understood his *Miranda* rights and was willing to speak to the agents. (Tr. 42-43).

After the warnings, Woeppel and Hanley presented a DEA "Consent to Search" form to Young. (Tr. 21; G. Ex. 1). The form has three pre-printed statements:

1. I have been asked to permit special agents of the Drug Enforcement Administration to search: (Describe the person, places, or things to be searched.)

2. I have not been threatened, nor forced in any way.

3. I freely consent to this search.

(G. Ex. 1).

Woeppel testified that he explained to Young the purpose of the form, completed the section identifying the areas to be searched and then read the form aloud to Young. (Tr. 22, 26-27, 71, 73-74; G. Ex. 1). In that section, he handwrote "203 Hillcrest, Rochester, NY" and "Blue Ford Pickup in Driveway of 203 Hillcrest." (*Id*.). According to Woeppel, as he was filling out the form, Young stated "that he didn't want us searching, but then he asked us if we could get a warrant for the place." (Tr. 22). Woeppel testified that either he or Hanley responded in the affirmative. (Tr. 22, 23). Woeppel testified that Hanley advised Young that the decision whether to consent to the search was his. (Tr. 23-24, 69, 76). After some wavering, Young eventually stated that "he would rather be here at [the residence] while we searched." (Tr. 23). At that

4

point, Woeppel testified, Young consented to the search and signed the form. (Tr. 24, 27; G. Ex. 1).

The ensuing search of Young's house took no more than twenty minutes and resulted in the seizure of a tax return and two cell phones. (Tr. 28). Woeppel testified that while the search was proceeding, Young never asked the agents to stop the search and never rescinded his permission for the agents to search.[3] (Tr. 28-29, 85).

Woeppel testified that Young was in his "late 40s" at the time of his arrest. (Tr. 34). He appeared healthy, sober and "relatively calm" during his interactions with Woeppel. (Tr. 29-30, 34). Young never indicated that he did not understand the agents' statements and questions, and he responded appropriately to them. (Tr. 32). Woeppel testified that neither he nor any other agents made any promises to Young or threatened him in order to induce his consent to search. (Tr. 33).

### III. November 12, 2010 Statements

Approximately an hour after Young's arrest, Woeppel transported him to the DEA office, where Woeppel and another DEA agent questioned him in an interview room. (Tr. 34, 36, 45). Woeppel testified that he did not re-administer the *Miranda* warnings to Young before speaking to him and that Young was not handcuffed. (Tr. 45-46). The interview lasted approximately twenty minutes, during which Young responded to the agents' questions and

---

[3] In a report dated two weeks after Young's arrest, Agent Hanley noted that Young had told the agents that he "wanted to revoke his consent to search the residence," but later changed his mind and signed the consent form. (Tr. 86). Woeppel testified, however, that Young was simply "questioning out loud" whether to allow the agents to search and never used the word "revoke." (Tr. 76, 85).

never sought to stop the interview or to consult with an attorney. (Tr. 47). Neither agent threatened or promised anything to Young or displayed their weapons during the interrogation. (Tr. 47-48). According to Woeppel, Young appeared calm throughout the interview. (Tr. 48).

## IV. Young's Affidavit

In support of his suppression motions, Young submitted an affidavit in which he stated that when he and the agents entered his residence, "I clearly told them that I did not want them to search the residence." (Docket # 84 at ¶ 4). Young further stated that the consent form only identified the Ford truck. (*Id*.). His affidavit also alleges that he did not understand his constitutional rights when he was questioned by the agents in the DEA office. (*Id*. at ¶ 6).

## DISCUSSION

### I. Motion to Dismiss Indictment for Insufficiency of the Evidence

Young moves to dismiss the indictment on the grounds of insufficiency of the evidence. (Docket # 72). Young speculates that the grand jury was not likely to have been informed that confidential informants involved in the investigation may have had a motive to incriminate others falsely. (Docket # 72 at 23).

Count One of the indictment charges that between March 2007 and April 2010 Young:

> did knowingly, willfully and unlawfully combine, conspire, and
> agree together and with others . . . to possess with intent to
> distribute, and to distribute, one hundred (100) kilograms or more

of a mixture and substance containing a detectable amount of marijuana.

(Docket # 1).

"An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.), *cert. denied*, 504 U.S. 926 (1992). Moreover, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation omitted). Rule 7(c) of the Federal Rules of Criminal Procedure requires only that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c).

It is well-established that an indictment that is valid on its face cannot be dismissed on the grounds that it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990). The time to advance such a motion is after the government has presented its case at trial. *See*, *e.g.*, Fed. R. Crim. P. 29(a); *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992).

Applying the above-cited authority, I find that the indictment is sufficient on its face. Any challenge to the sufficiency of the evidence at this stage is premature and should await

the government's presentation of proof at trial. Accordingly, I recommend that the district court deny Young's motion to dismiss the indictment.

## II. Motion to Suppress Photographic Identification

I turn next to Young's motion to suppress evidence of the photographic identification. (Docket # 72). Evidence of an out-of-court photographic identification will be suppressed under the due process clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In determining whether to exclude evidence of a pretrial identification, a court first must consider whether the identification procedure was unduly suggestive. *Id*. To decide whether a photographic array is unduly suggestive, a court should consider several factors including "the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990). Specifically, the court must consider "whether the picture of the accused . . . so stood out from all the other photographs as to suggest to an identifying witness that [the accused] was more likely to be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (internal citations omitted).

If the identification procedure was unduly suggestive, the court must proceed to determine whether the identification nevertheless possesses "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive . . .[,] a district court may still admit the evidence 'if, when viewed in

8

the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

At the government's request, this Court bifurcated the *Wade* hearing. To date, the government has offered evidence relating only to the issue of the suggestiveness of the procedure. No continuation of the hearing is necessary if the court determines that the procedure was not unduly suggestive. If, on the other hand, the court finds that the procedure was impermissibly suggestive, the hearing must be continued to determine whether the identification has an independent basis of reliability.

In the array presented to the informant, Young's photograph is one of eight photographic images of different African-American men of roughly similar ages. All are head shots and feature men with short hair and mustaches, some of whom have slight beards. Young's face is markedly darker than the faces of the other seven men, however, as a result of both the quality of the photo and Young's complexion. In addition, Young's photograph is the only one with a blue background, which is noticeably brighter than the more muted, similarly-hued backgrounds of the others. I find that these differences in color and shading draw the viewer's eye to Young's photograph. Whether those differences – standing alone – are significant enough to "suggest to an identifying witness that [the defendant] was more likely to be the culprit," *Jarrett v. Headley*, 802 F.2d at 41, is a determination I choose not to make at this time. *Compare United States v. Douglas*, 525 F.3d 225, 243 (2d Cir.) ("[a]s to the background colors of the photos, no two are the same, and no picture stands out because of its background color"), *cert.*

*denied*, 555 U.S. 1033 (2008); *United States v. Bautista*, 23 F.3d at 731 ("[w]hile it is true that the photograph of [the defendant] is brighter and slightly more close-up from the others, we find that these differences did not render the array suggestive"); *United States v. Stanley*, 2009 WL 5066864, *6 (E.D.N.Y. 2009) ("the difference in background colors did not place undue focus on [the defendant] because the filler backgrounds were not all uniform either") *with United States v. Saunders*, 501 F.3d 384, 390 (4th Cir. 2007) ("[the defendant's] photo stood out sharply from the others in the array [as a result of] . . . [t]he dark background and lack of overhead lighting"), *cert. denied*, 552 U.S. 1157 (2008); *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir.) ("differences such as background color can make a picture stand out, and can act to repeatedly draw a witness's eye to that picture"), *cert. denied*, 513 U.S. 1007 (1994); *United States v. Friedman*, 1996 WL 612456, *27 (E.D.N.Y. 1996) (array suggestive because "[w]hen [the defendant's] pale complexion and the background are viewed in conjunction, the effect is quite striking[, . . . making the defendant's] photograph stand[] out in both arrays in a manner that is extremely distinctive"), *aff'd in part and rev'd in part on other grounds*, 300 F.3d 111 (2d Cir. 2002), *cert. denied*, 538 U.S. 981 (2003). Rather, I find it prudent to proceed to the second phase of the *Wade* hearing in order to assess the independent reliability, if any, of the identification. That hearing shall be conducted on December 4, 2012, at 2:00 p.m.

### III. Motion to Suppress Physical Evidence

I now turn to Young's motion to suppress the evidence seized from 203 Hillcrest Street on November 12, 2010. (Docket # 72). Because the search was conducted without a warrant, its legality turns on whether Young voluntarily consented to the search. *See Maryland*

*v. Dyson*, 527 U.S. 465, 466 (1999) (*per curiam*) (citing *California v. Carney*, 471 U.S. 386, 390-91 (1985)).

It is well-established that a warrantless search is permissible if based upon the valid consent of a person authorized to provide consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995), *cert. denied*, 516 U.S. 1050 (1996). The consent need only be voluntary, that is, obtained without coercion, even if it was given without knowledge of the right to refuse consent. *See Schneckloth v. Bustamonte*, 412 U.S. at 241-42; *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995).

Voluntariness is determined based upon the totality of the circumstances. *Schneckloth*, 412 U.S. at 227; *United States v. Hernandez*, 5 F.3d 628, 632 (2d Cir. 1993); *United States v. Kon Yu-Leung*, 910 F.2d 33, 41 (2d Cir. 1990). Among the relevant considerations are: age, education, background, physical and mental condition, the setting in which the consent is obtained, whether *Miranda* warnings are administered and whether the individual has knowledge of the right to refuse consent. *See Schneckloth*, 412 U.S. at 226; *United States v. Kon Yu-Leung*, 910 F.2d at 41. "Consent must be a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority," *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993) (citations omitted), *cert. denied*, 511 U.S. 1130 (1994), and the fact that it is obtained while the individual is in custody does not render it involuntary, *see, e.g., United States v. Arango-Correa*, 851 F.2d 54, 57 (2d Cir. 1988), although it does "require more careful scrutiny," *United States v. Wiener*, 534 F.2d 15, 17 (2d Cir.), *cert. denied*, 429 U.S. 820 (1976).

The government bears the burden of establishing by a preponderance of the evidence that the consent was voluntary. *United States v. Isiofia*, 370 F.3d 226, 230 (2d Cir. 2004); *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir.), *cert. denied*, 454 U.S. 830 (1981). "The ultimate question presented is whether the officer had a reasonable basis for believing that there has been consent to the search." *United States v. Isiofia*, 370 F.3d at 231 (internal quotations and citations omitted).

Considering the totality of the circumstances, I find that Young's consent to the search of his home was voluntary. Young's initial consent to the search occurred outside, while he was handcuffed, shortly after he had been approached by approximately seven agents, all of whom had their guns drawn. Although the circumstances of Young's arrest were likely to have been intimidating, the record demonstrates that after he was taken into custody, Woeppel and Hanley holstered their guns, spoke to Young in a conversational tone and explained that they were with the DEA and were there to execute an arrest warrant. It was only after this explanation that the agents asked Young whether they could search the residence. The credible testimony demonstrates that Young agreed to the search and assisted the agents in identifying the key to the front door.[4] *See United States v. Crespo*, 834 F.2d 267, 269-71 (2d Cir. 1987) (holding consent voluntary even when made after officers displayed guns, arrested and handcuffed defendant), *cert. denied*, 485 U.S. 1007 (1988).

---

[4] Even if the circumstances surrounding Young's arrest were so intimidating as to render involuntary his initial consent, the agents' protective sweep of the premises did not yield any evidence. It was not until after Young was advised of his *Miranda* rights, his right to refuse consent and that the decision whether to consent was his, and had executed the written consent, that the agents conducted the search that yielded the evidence seized.

Once inside the house, the agents read Young his *Miranda* rights, and Young reaffirmed his consent and executed a written consent form. Although the testimony demonstrated that Young initially wavered about whether to permit the search and sign the form, Young eventually affirmed his consent and executed the written consent form. In addition to advising him of his *Miranda* rights, the agents also informed Young that he did not have to consent to the search, and they explained and read the consent form to Young. The form stated that the consent was freely given and was not the product of threats or force. Young was calm and responsive during his interactions with Woeppel and Hanley, and no credible evidence exists that the agents induced or coerced Young to sign the consent form. Indeed, the fact that Young expressed hesitation about whether to consent shows that he was aware that he could refuse consent. Although the agents did tell Young that in the absence of his consent they could obtain a search warrant for the premises, they did so only after Young inquired. In any event, "advising a person of the fact that a search warrant can be obtained does not constitute coercion." *United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983) (internal quotation omitted), *cert. denied*, 471 U.S. 1021 (1985).

Finally, Young suggests that when he executed the written consent form, the only search location identified on the form may have been the truck in the driveway. Although I credit Woeppel's testimony that he "believes" that he completed the information identifying both the residence and the vehicle before reading and providing the form to Young (Tr. 74), even if he had not, the credible and unequivocal testimony is that Young verbally consented to the search of

13

the residence in any event.[5]  *See*, *e.g.*, *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993) ("consent . . . need not be expressed in a particular form but can be found from an individual's words, acts or conduct") (internal quotation omitted); *United States v. Zadiriyev*, 2009 WL 1033365, *6 (S.D.N.Y. 2009) (verbal consent sufficient despite defendant's subsequent refusal to execute written consent).

For the reasons discussed above, I recommend that the district court deny Young's motion to suppress tangible evidence.

## IV.  Motion to Suppress Statements

Finally, I turn to Young's motion to suppress statements he made on November 12, 2012 on the grounds that he was not advised of his constitutional rights and did not knowingly and voluntarily waive those rights before being questioned. (Docket # 72).

Statements made during custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right.  *Miranda v. Arizona*, 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official
> questions an individual and that questioning was (1) conducted in
> custodial settings that have inherently coercive pressures that tend

---

[5]  The testimony makes clear that Young's conversation with the agents about the possibility of obtaining a search warrant concerned Young's residence and that Young stated that he would "rather be here at the location while we searched, and at that time he gave us permission to search the residence." (Tr. 24).

> to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)). To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

On the record before me, I find that Young was properly advised of his *Miranda* rights and voluntarily waived them before speaking to the agents. Woeppel testified that Hanley advised Young of his *Miranda* rights by reading them from a rights card and that Young explicitly stated that he understood his rights and was willing to speak to the agents. Young, who appeared calm, coherent and sober throughout his encounter with Woeppel, never indicated that he did not understand his rights, wanted an attorney or wished to stop the questioning. The record further establishes that the agents did not threaten or make promises to Young in order to induce him to speak. Finally, given the short time – approximately an hour – between the administration of the warnings at Young's residence and his subsequent interview at the DEA office, the failure to re-advise him of his rights, considering the totality of the circumstances, does not require suppression. *See, e.g.*, *United States v. Banner*, 356 F.3d 478, 480 (2d Cir. 2004) ("once an arrested person has received a proper *Miranda* warning, the fact that questioning is stopped and then later resumed does not necessarily give rise to the need for a new warning[;]

. . . [i]f the person in custody has been sufficiently informed of his or her constitutional rights, his or her *Miranda* rights have been vindicated"), *vacated on other grounds sub nom. Forbes v. United States*, 543 U.S. 1100 (2005); *United States v. Weekley*, 130 F.3d 747, 751 (6th Cir. 1997) ("a number of circuits have ruled that re-warning is not required simply because time has elapsed") (collecting cases); *Salierno v. Artus*, 2010 WL 2723214, *6 (E.D.N.Y.) ("[g]enerally, renewed warnings need not be given unless the circumstances have changed so seriously that the suspect's answers no longer are voluntary, or he no longer is making a knowing and intelligent relinquishment or abandonment of his rights") (internal quotation omitted), *report and recommendation adopted by*, 2010 WL 2723259 (E.D.N.Y. 2010); *United States v. Morgan*, 2009 WL 152646, *4 (N.D.N.Y. 2009) ("the passage of time between the administration of *Miranda* warnings to the [d]efendant and the later questioning by [the agent] while the [d]efendant was inside the police vehicle does not render the [d]efendant's *Miranda* warnings invalid[;] . . . [c]ourts must look to the totality of the circumstances to determine whether renewed warnings are necessary").

On this record, I recommend that the district court deny Young's motion to suppress the statements he made on November 12, 2010.

## **CONCLUSION**

For the reasons stated above, I recommend that the district court deny Young's motions to dismiss the indictment for sufficiency of the evidence (Docket # 72), to suppress evidence seized from Young's house (Docket # 72) and to suppress statements made on November 10, 2010. (Docket # 72).

The *Wade* hearing shall be continued on **December 4, 2012**, at **2:00 p.m.**

**IT IS SO ORDERED.**

                                                    *s/Marian W. Payson*
                                                     MARIAN W. PAYSON
                                             United States Magistrate Judge

Dated: Rochester, New York
       October  19 , 2012

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
        October   19  , 2012

---

[6] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).