UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                Plaintiff,

       v.

MARTIN YOUNG,

                Defendant.
_____

REPORT & RECOMMENDATION

10-CR-6211L

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated December 14, 2010, all pretrial matters in the above-captioned case were referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 67). Defendant Martin Young ("Young") has been charged with conspiracy to possess with intent to distribute and to distribute one hundred or more kilograms of marijuana, in violation of 21 U.S.C. § 846. (Docket # 1).

On October 19, 2012, this Court issued a Report and Recommendation on Young's motion to suppress a photographic identification made by a cooperating government witness. (Docket # 192). At the government's request, this Court conducted a bifurcated *Wade* hearing, initially considering only whether the identification procedure utilized was unduly suggestive.[1]

---

[1] A *Wade* hearing refers to a hearing held pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether an out-of-court identification resulted from an impermissibly suggestive procedure and, if so, whether it is independently reliable.

At the first stage of the bifurcated hearing, Andrew Woeppel ("Woeppel"), an agent with the Drug Enforcement Administration, testified that on September 15, 2009 he conducted a photographic identification procedure with the witness, who had previously provided information about Young. (Docket # 192 at 2). Woeppel showed the witness an eight-photograph array and asked the witness whether he or she recognized anyone depicted in the array. (*Id.*). Woeppel requested the witness to initial and date the photograph of any individual whom the witness recognized and to write the name of the individual. (*Id.*). According to Woeppel, the witness looked at the array for approximately ten seconds and then identified Young's photograph. (*Id.*).

Following the hearing, this Court issued a Report and Recommendation finding that Young's photograph had differences in color and shading from the other photographs that "draw the viewer's eye to Young's photograph." (*Id.* at 9). This Court did not determine whether those differences were significant enough to render the photographic array unduly suggestive, but elected to proceed to the second phase of the *Wade* hearing in order to assess the independent reliability of the identification. (*Id.* at 9-10).

On January 29, 2013, this Court completed the bifurcated *Wade* hearing. (Docket ## 219, 231).[2] At the hearing, the government presented the testimony of Charles Malcolm ("Malcolm") – the previously unidentified witness who had made the identification. The following constitutes my recommendation concerning the reliability of his identification.

---

[2] The transcript of the hearing conducted on January 29, 2013 is hereinafter referenced as "Tr.__". (Docket # 231).

## FACTUAL BACKGROUND

During the hearing, Malcolm identified the defendant Young as an individual whom he had known as "Martin." (Tr. 8-9). Malcolm testified that he first met Young in Phoenix, Arizona in the summer of 2007. (Tr. 9-10). He explained that he had traveled to Arizona from Florida, while Young and two other individuals had traveled there from New York. (Tr. 10-11). When they arrived in Arizona, they met as previously-arranged at a gas station in Phoenix and then traveled to Tucson. (Tr. 11-13). When the group arrived in Tucson, they stayed together in the same house. (Tr. 14, 17, 56). According to Malcolm, he and Young resided together in the house for the next six to eight months. (Tr. 18). Malcolm testified that during that period, he took a trip to Florida and "there were times when [Young] left too." (*Id.*). During the periods that they were both in Tucson, however, they saw and talked to each other "basically . . . every day."[3] (*Id.*).

Malcolm testified that in 2008 he was arrested on federal criminal charges stemming from the use of false information on a United States passport application. (Tr. 6-7, 18-19, 48-49). He was released on bail in May 2009, at which time he began living in Rochester, New York with an individual who was acquainted with Young. (Tr. 19, 48-49). During the period of his pretrial release, Young visited the house where Malcolm was residing on numerous occasions. (Tr. 19-20). According to Malcolm, between May 2009 and mid-summer 2009, Young visited the house approximately four times each week. (Tr. 20).

---

[3] Malcolm testified that in addition to the photographic identification that occurred on September 15, 2009, he also participated in other photographic identification procedures, some of which included photographs of Young. (Tr. 28-32). The government has represented that it has no record of any other photographic array procedures involving Malcolm and Young, other than an identification in the grand jury that occurred after the September 15, 2009 procedure. (Docket # 220; Tr. 58). In any event, none of the procedures occurred prior to the period in 2007 when Malcolm resided with Young in Arizona. (Tr. 54).

Malcolm eventually pleaded guilty to the charges pursuant to a plea agreement that contained a cooperation provision. (Tr. 6-8). Malcolm testified that he hopes to receive a benefit at sentencing for his cooperation. (Tr. 8, 51). In addition, the government has intervened in his deportation proceedings to obtain an indefinite deferral of deportation. (Tr. 50).

## **DISCUSSION**

A defendant has the right not to be subjected to an identification procedure that creates a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). In determining whether to exclude a pretrial identification, the court must undertake a two-step analysis. First, the court must consider whether the identification procedure was unduly suggestive. If so, the court then must determine whether the identification nevertheless possessed "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.), (citing *Manson v. Brathwaite*, 432 U.S. at 109-17), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive, therefore, a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

Having deferred on the issue whether the identification procedure was unduly suggestive, this Court now addresses "whether the identification was independently reliable, *see Manson*, 432 U.S. at 109-114, or whether there was a very substantial likelihood of

4

misidentification." *Neal v. Kuhlmann*, 1988 WL 13781, *6 (S.D.N.Y. 1988) (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). In doing so, the Court considers the factors articulated in *Neil v. Biggers*, 409 U.S. at 199. Those factors include "the opportunity of the witness to view the criminal at the time of the [contact], the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness [during the identification], and the length of time between the [contact] and the [identification]." *Id.* at 199-200.

        Malcolm testified credibly that he had extensive contact with Young before he was involved in any photographic identification procedure. Malcolm testified that he lived with Young for at least six months in Tucson, during which he saw and spoke to Young nearly every day. (Tr. 17-18). That their regular contact during that period of time provided an ample basis for Malcolm to identify Young reliably is underscored by Malcolm's rapid selection of Young's photograph from the eight presented in the array (Docket # 197 at 2) and his unequivocal in-court identification (Tr. 8-9).[4] *See, e.g.*, *Wiggins v. Greiner*, 132 F. App'x 861, 865 (2d Cir.) ("[f]urther, when shown the challenged photograph and again when testifying in court, the eyewitness's identification of [defendant] . . . was unequivocal"), *cert. denied*, 564 U.S. 986 (2005); *Pittman v. Portuondo*, 1999 WL 1251820, *4 (E.D.N.Y. 1999) ("[a]lso militating in favor of the independent reliability of [witness's] in-court identification was its unequivocal nature").

---

[4] Malcolm again saw Young regularly during 2009, but he recalls that he participated in photographic identification procedures in early 2009 before he saw Young again. Although the government disputes that Malcolm participated in any procedures involving Young other than the September 15, 2009 procedure, the dispute is immaterial because Malcolm plainly had sufficient interactions with Young in 2007 to provide an independent basis for a reliable identification at any time in 2009.

5

In sum, Malcolm's testimony establishes that his extensive contact with Young provided an independently reliable basis for his identification of the defendant. *See United States v. Wolfish*, 525 F.2d 457, 462 (2d Cir. 1975) (independent basis for identification existed where witness had three prior ten-minute meetings with defendant during which defendant had made unusual requests), *cert. denied*, 423 U.S. 1059 (1976); *Robinson v. Artus*, 664 F. Supp. 2d 247, 259-60 (W.D.N.Y. 2009) (independent basis existed where one witness had known defendant for two months prior to the crime and the defendant had been a frequent overnight guest of the other witness); *United States v. Perez*, 248 F. Supp. 2d 111, 114-16 (D. Conn. 2003) (independent basis existed where witness had opportunity to observe defendant over a two-day period) (collecting cases); *United States v. Alexander*, 923 F. Supp. 617, 625 (D. Vt. 1996) (holding any identification would be independently reliable because witnesses had "extensive contact" with defendants over period of several months); *United States v. Shakur*, 1987 WL 5368, *1 (S.D.N.Y. 1987) (denying request for *Wade* hearing relating to photographic identifications by witnesses who had "extensive, personal contacts with [defendant] in both licit and illicit activities"). Accordingly, it is my recommendation that Young's motion to suppress the identification by Malcolm be denied.

## **CONCLUSION**

For the foregoing reasons, it is my recommendation that Young's motion to suppress the photographic identification **(Docket # 72)** be **DENIED**.

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
April  30 , 2013

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                           *s/Marian W. Payson*
                                           MARIAN W. PAYSON
                                           United States Magistrate Judge

Dated: Rochester, New York
        April   30  , 2013

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).